UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No: 1:20-cr-00184-TWP-MJD |
| ERIC MIDDLEBROOK, | ) ) ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO REVOKE RELEASE ORDER**

This matter is before the Court on the Government's Motion for Revocation of Release Order. (Filing No. 23.) The Government requests a *de novo* review of the Magistrate Judge's Order permitting pretrial release of Defendant Eric Middlebrook ("Middlebrook") pursuant to 18 U.S.C. § 3145(a). The Court has reviewed the Complaint and Affidavit (Filing No. 2), Minute Order for Detention Hearing (Filing No. 24), transcript of the detention hearing held on August 5, 2020, the pretrial services report ("PS3") prepared by the United States Probation Office (Filing No. 6), and the Government's Motion. For the reasons stated below, the Court finds the Government has met its burden to show by clear and convincing evidence that there are no conditions or combination of conditions which would overcome the unacceptable risk that Middlebrook's release poses a danger to the community. Accordingly, the Government's Motion is **granted.**

**I. BACKGROUND**

A Complaint and Affidavit was filed on July 20, 2020 charging Middlebrook with distribution of 50 grams or more of a mixture or substance containing a detectable amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Filing No. 2.) The Government orally moved for pretrial detention pursuant to Title 18, United States Code, Section 3142(f)(1)(E) on the

basis that Middlebrook presented both a danger to the community and a risk of flight. On August 5, 2020, the Magistrate Judge conducted a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of the statute would reasonably assure the appearance of Middlebrook as required and the safety of any other person and the community. At the conclusion of the hearing, the Magistrate Judge ordered that Middlebrook was to be released subject to certain conditions, but the execution of the release order was stayed upon motion of the Government pending review of the order by this Court. Middlebrook did not filed a response to the Government's revocation motion. The parties verbally agreed that a hearing was not necessary and a decision could be made based on the record.

## II.  FINDINGS OF FACT

The Complaint alleges, and Indianapolis Metropolitan Police Sergeant Kessie ("Sgt. Kessie") testified, regarding events that occurred on July 22, 2020, as well as his knowledge of Middlebrook's involvement in multiple shootings. Specifically, on July 22, 2020, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed three search warrants at properties believed to be supported by Middlebrook. The search of Middlebrook's primary residence, on Blue Spruce Court, Greenwood, Indiana ("Blue Spruce Court"), resulted in the recovery of approximately five pounds of methamphetamine, four loaded firearms, an ounce of Fentanyl, and approximately $6,000.00 in U.S. currency. Agents seized an additional three firearms, methamphetamine and approximately $5,500.00 from 1913 Martin Street, Indianapolis, Indiana ("Martin Street"), and they seized a firearm, marijuana, and approximately $7,900.00 in U.S. currency from 2312 Willow Lakes East Boulevard, Greenwood, Indiana. Additionally, while agents were searching the Blue Spruce Court residence, they found paperwork reflecting Middlebrook's control over a nearby storage unit; they obtained a search warrant to search that

storage unit, and found an additional five pounds of methamphetamine and $34,000.00 in U.S. currency.

Sgt. Kessie testified that Middlebrook conducted one of two controlled purchases of methamphetamine in an automobile in the presence of his pregnant wife, while three children were also present. Middlebrook was interviewed by the ATF after he waived his *Miranda* rights on July 22, 2020. In that interview, he discussed four separate shootings in which he had been involved. He relayed to ATF agents that he was shot on two separate occasions, a total of nine times, where he was actually struck by gun fire. On a third occasion in 2018, he was shot at (but not injured) near the Martin Street residence. On a fourth occasion, Middlebrook reported that others started shooting at him and he fired in self-defense. Middlebrook's brother was killed during the fourth shootout that resulted in his being charged with, and ultimately acquitted, of felony murder in 2019. Middlebrook did not dispute any of Sgt. Kessie's testimony regarding the shootings.

On July 22, 2020, an Indictment was filed charging Middlebrook with Count 1: possession with intent to distribute 500 grams or more of Methamphetamine; and Count 2, possession with intent to distribute Methamphetamine on premises where children are present or reside. ([Filing No. 12](#).)

Middlebrook is 31 years of age and has ties to the community. He is a life-long resident of the Indianapolis, Indiana area. He lives with his wife and they have three minor children (under the age of ten) and one on the way. Middlebrook has not been employed for more than a year and his financial resources are unknown.

The PS3 reflects that the instant offense is Middlebrook's fifteenth arrest, but that he has sustained no convictions as an adult. He has separate arrests for violent offenses such as domestic battery, battery and criminal confinement, and stalking (2 times), all of which were dismissed. He

was charged and acquitted of felony murder in September 2019. Between 2017 and 2019, Middlebrook failed to appear in court on seven separate occasions, including once on a felony drug case in Marion County. Middlebrook has never violated the conditions of probation, and was not under supervision at the time of his arrest in this case. He has a U.S. passport and in 2016 traveled to Mexico for vacation. Middlebrook was not given a drug test at the time of his arrest, and there is no report of substance abuse. The PS3 places Middlebrook in risk category III, indicating a moderately high risk of flight and danger to the community. (Filing No. 6 at 6.)

### III.  CONCLUSIONS OF LAW

The parties agree there is a presumption for detention given the fact that Middlebrook is charged with two counts under the Controlled Substance Act, both of which have a maximum penalty in excess of ten years. *See* 18 U.S.C. § 3142(e). Thus, the burden of production lies first with the defense. If he is able to rebut the presumption of detention, the burden of proof then lies with the Government as to dangerousness by clear and convincing evidence, and as to flight by a preponderance of the evidence, but the presumption that those conditions cannot be determined or found to reasonably assure appearance and safety does not disappear upon the production of some evidence, but remains a factor in the case. On this point, the Seventh Circuit has adopted the thorough reasoning of the court in *United States v. Jessup*, 757 F.2d 378, 381 (1st Cir. 1985). *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986), and *United States v. Diaz*, 777 F.2d 1236 (7th Cir. 1985). Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of a presumption, the rebuttable presumptions of § 3142(e) are not such "bursting bubbles." *Jessup,* 757 F.2d at 383. Thus, even if a defendant has rebutted a presumption by producing some evidence, the court should still give weight to Congress's finding and direction that repeat offenders involved in crimes of violence or drug

4

trafficking, as a general rule, pose special risks of flight and danger to the community. *Dominguez*, 783 F.2d at 707; *Diaz*, 777 F.2d at 1238; *Jessup*, 757 F.2d at 383.

In determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of any other person and the community, the court must consider the following factors under 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g)(1)-(3)(A), (B), and (4).

The Court has considered the evidence presented on the issue of release or detention and weighed both in accordance with the factors set forth in 18 U.S.C. § 3142(g) and the legal standards set forth above. Among the factors presented for the Court's consideration is Middlebrook's character, his family ties, lack of employment, unknown financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning court appearances. *See* 18 U.S.C. § 3142(g)(3)(A). However, the presence of community ties have been found to have no correlation with the issue of safety of the community. *United States v. Delker*, 757 F.2d 1390, 1396 (3rd Cir. 1985). .

5

The Court first considers the nature and circumstances of the offenses charged. 28 U.S.C. § 3142(g)(1). After two controlled buys, law enforcement seized--pursuant to search warrants--10 pound of Methamphetamine, Fentanyl, over $50,000.00 cash, and numerous firearms, from Middlebrook's properties. The weight of the evidence against Middlebrook is strong and favors detention. 18 U.S.C. § 3142 (g)(2).

There are factors weighing in Middlebrook's favor. He is married with several children and a life-long resident of the Indianapolis community. At the time the offenses were charged, Middlebrook was not on probation, parole or otherwise completing a sentence. Although he has failed to appear in court on seven occasions, and has over 15 arrests, he has no prior convictions as an adult. He has traveled recently outside the United States; however, his passport can be ordered surrendered. Based on these findings, the Court concludes that Middlebrook is not is a serious risk of flight.

There are factors which demonstrate that Middlebrook is an unacceptable danger to the community. Regarding his financial resources, although more than $50,000.00 in U.S. currency was seized from his properties, he has not been employed for more than a year and his financial resources are unknown. His counsel argued that it is important to the family that Middlebrook be home to take care of his children and wife through her pregnancy and his family situation would be motivation for Middlebrook to "walk the straight and narrow and follow every rule of pretrial release." In response, the Government noted that in one of the July 2020 controlled buys, Middlebrook sold drugs from his vehicle to an undercover source, while his pregnant wife and some children were in the vehicle. Middlebrook also stored large quantities of drugs, cash and four loaded firearms in the home where he resides with his wife and three young children. The

Government argues persuasively that these situations show family ties are, if nothing else, complicit in enabling Middlebrook to continue his criminal conduct.

Next, the Court considers whether any condition or combination of conditions exist which would overcome the unacceptable risk and seriousness of the danger to any person or the community that would be posed by Middlebrook's release. The language referring to the safety of the community refers not only to the danger that Middlebrook might present to a particular identifiable individual, but also the engagement in criminal activity to the detriment of the community. *See United States v. Dominguez,* 629 F. Supp. 701 (N.D. Ind. 1986). In exercising discretion on the issue of release or detention, a judge must bear in mind that a finding that no reasonable conditions of release will keep a defendant from endangering the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). The Court is cognizant that the United States Supreme Court has held that Congress did not intend pretrial detention to be punitive. *See United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697, (1987). This decision is not.

Middlebrook reports no employment over the past year; however, over $50,000.00 in U.S. currency was seized from his properties. He allegedly engaged in two controlled buys and some of the controlled buy currency was located in the seized currency. The Government argues that trafficking of large quantities of drugs (over 10 pounds of Methamphetamine and 20 grams of Fentanyl were seized), and possession of firearms (8 firearms were seized) is exceptionally dangerous. The Court finds this argument to be credible and persuasive. Dangerousness is not just assault, but it is also engaging in narcotics trafficking undeterred, such as in the presence of one's spouse and children. Middlebrook's *Mirandized* statements that on a number of occasions in

7

the recent past, he has been involved in shootouts both as the victim as well as the shooter are of great concern to the Court.

The Court must consider all reasonable, less-restrictive alternatives to detention, but finds that none exists.  *See* 18 U.S.C. § 3142(e); *United States v. Infelise,* 934 F.2d 103, 105 (7th Cir.1991).  This community is riddled with gun violence.  The Court is not convinced by clear and convincing evidence that Middlebrook would abide by any conditions of release.  Detention is therefore appropriate to protect others from dangerous criminal activity of drug possession and trafficking.  The nature of the offenses, strong weight of evidence against him, his past and present conduct, lack of verifiable employment and questionable financial resources all favor detention.  The Court finds by clear and convincing evidence that no conditions or combination of conditions exist which would overcome the unacceptable risk that Middlebrook's release poses a danger to other individuals and to the community.

## IV.  **ORDER**

Assuming Middlebrook has overcome the presumption of detention, after considering the factors set forth under 18 U.S.C. § 3142(g), the District Court's *de novo* determination is that the Government has met its burden of proof and the Government's Motion for Revocation of Release Order ([Filing No. 23](#)) is **GRANTED**.  Middlebrook is remanded to the custody of the United States Marshal pending trial or other disposition of this matter.

**SO ORDERED.**

Date:  8/11/2020

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
michael.donahoe@fd.org

Michelle Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov